UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL E. BOWMAN,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF BOISE, CITY OF BOISE POLICE DEPARTMENT, LAUREN MCLEAN, individually and in her official capacity as the Mayor of the City of Boise, RYAN LEE, individually and in his official capacity as the Chief of Police for the City of Boise police, AMY MORGAN, individually and in her official capacity as a law enforcement officer for the City of Boise Police, ADAM NIELSEN, individually and in his official capacity as a law enforcement officer for the City of Boise police, and JOHN/JANE DOES 1-10, individually and in their official capacities,<br><br>        Defendant. | Case No. 1:22-cv-00132-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant's Motion to Dismiss Plaintiff 's Amended Complaint (Dkt. 30). For the reasons set forth below, the Court will grant Defendants' motion to dismiss, dismissing Count One against Sergeant Nielsen, without prejudice, and Count Two against the City of Boise, the City of Boise Police Department (collectively, "the City"), and BPD Detective Amy Morgan, with prejudice and without leave to amend. In addition, the Court finds that Plaintiff Michael Bowman does not have

**MEMORANDUM DECISION AND ORDER - 1**

standing to seek injunctive relief. Only Count One against Detective Morgan, in her individual capacity, survives.

## BACKGROUND

1. **Factual Background**

In March 2020, the Governor of Idaho declared a public health emergency in response to the COVID-19 pandemic, which initially included a government-mandated closure of non-essential business and activities. On March 26, 2020, the Boise Police Department was called to investigate a domestic disturbance call between the plaintiff, Michael Bowman, and his teenage son, M.B. *Amend. Compl.* ¶ 34, Dkt. 24. After determining that the disturbance involved no physical violence, the officers, with Bowman's consent, agreed to take M.B. to his "adoptive grandparents" to defuse the situation. *Id.* ¶ 35. The officers, however, did not follow Bowman's instructions and instead took M.B. to a friend's house – which the officers failed to tell Bowman, leaving him in the dark regarding his son's whereabouts between March 26 and April 3, 2020. *Id.* ¶ 36.

On March 31, 2020, Detective Amy Morgan was contacted by the mother of M.B.'s friend, who informed Detective Morgan that M.B. could no longer stay at her residence. *Id*. ¶ 38. On April 3, 2020, Detective Morgan contacted Bowman, brought M.B. back to Bowman's residence, and demanded that Bowman take custody of M.B. *Id*. ¶¶ 39-40. Bowman agreed to take back his son, but with the caveat that M.B. would remain in a tent outside to quarantine. *Id*. ¶ 41. Detective Morgan then took custody of

M.B., pursuant to I.C. § 16-1601, based on her belief that M.B. was in immediate harm because he would have to sleep in a tent until he completed quarantine.

### 2. Procedural History

Bowman filed a Complaint on March 30, 2022. *See Compl.*, Dkt. 2. The original Complaint named the City of Boise, the City of Boise Police Department, Boise Mayor Lauren McLean, Police Chief Ryan Lee, Sergeant Adam Nielsen, and Detective Amy Morgan, alleging federal claims under 42 U.S.C. § 1983 and state law tort claims arising out of Detective Morgan's taking Bowman's son into temporary shelter care on April 3, 2020. Defendants challenged the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In his response brief, Bowman agreed to dismiss the claims against Chief Lee and Mayor McLean with prejudice. Bowman also agreed to dismiss Sergeant Nielsen without prejudice, stating he was unaware of Sergeant Nielsen's role in the action at that juncture but wanted the option to re-allege claims against him once it could "be ascertained his part in the Plaintiff's injury." *Pl's Resp. Br. to First. Mot. to Dismiss*, pp. 3-4, Dkt. 9-1.

The Court granted the motion in part and denied in part, allowing the claims against Morgan in her individual capacity to proceed but dismissing the claims against the City and the BPD with leave to amend. *Memorandum Decision and Order*, Dkt. 22. Chief Lee and Mayor McLean were dismissed with prejudice and without leave to amend, and Sergeant Nielsen was dismissed without prejudice. Bowman then filed his Amended Complaint in which he now asserts two constitutional claims: (1) alleged

violations of his Fourth and Fourteenth Amendment rights by Detective Morgan,

Sergeant Nielsen, and John/Jane Does 1-10 (Count One); and (2) alleged violations of his

Fourth Amendment rights by the City and BPD (collectively, the "City"), Detective

Morgan, and John/Jane Does 1-10 (Count Two).

Defendants now move to dismiss all claims against the City and Sergeant Nielsen,

as well as any claim against Detective Morgan for supervisory liability pursuant to Rule

12(b)(6) for failure to state a claim. Defendants further contend that Bowman's prayer for

injunctive relief should be dismissed pursuant to Rule 12(b)(1) for lack of standing.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a challenge to the authority of

the federal court to consider a dispute because "[f]ederal courts are courts of limited

jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Fed.

R. Civ. P. 12(b)(1) (requiring dismissal of complaint where the court lacks subject matter

jurisdiction). Thus, a court is "presumed to lack jurisdiction in a particular case unless the

contrary affirmatively appears," *Stock W., Inc. v. Confederated Tribes of the Colville*

*Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989), and the plaintiff bears the burden of

establishing that such jurisdiction exists, *KVOS, Inc. v. Associated Press*, 299 U.S. 269,

278 (1936).

In assessing dismissal of claims pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the Court must "accept factual allegations in the Complaint as true and

construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v.*

*St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). A plausible claim includes "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court need not accept as true,

conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted

deductions of fact or legal conclusions couched as facts. *Iqbal*, 556 U.S. at 678; *Clegg v.

Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994); *Western Mining Council

v. Watt*, 643 F.2d 618, 630 (9th Cir. 1981).

Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2); *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th

Cir. 2016) (discussing pleading requirements for claims regarding fraud under Rule 9(b),

for which dismissals are "functionally equivalent" to Rule 12(b)(6)). A Complaint "that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus,

"conclusory allegations of law and unwarranted inferences are insufficient to defeat a

motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## ANALYSIS

1. **Count One – Sergeant Nielsen**

Count One against Sergeant Nielsen must be dismissed. Bowman has stated that he is "unaware of his role in this action" and "can be dismissed from this action" but requests that Nielsen be dismissed without prejudice. *Pl's Resp.*, p. 4, Dkt. 26. The Court will therefore dismiss the claims against Sergeant Nielsen without prejudice.[1] If Bowman seeks to amend his Complaint to reassert claims against Nielsen past the amendment deadline, however, he must show good cause to amend the scheduling order. Fed. R. Civ. P. 16(b); *Seattle Pac. Indus., Inc. v. S3 Holding LLC*, 831 F. App'x 814, 816 (9th Cir. 2020) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) ("Under Federal Rule of Civil Procedure 16(b), a party seeking to amend a pleading after the scheduling order's deadline for doing so must show "good cause" for amendment.").

2. **Count Two - *Monell* liability against the City of Boise and Boise Police Department**

Defendants contend that Bowman fails to allege against the City of Boise and the Boise Policy Department under 42 U.S.C. § 1983 because the facts, as alleged, fail to establish *Monell* liability.

As explained in the Court's earlier decision, a municipality is a "person" within the meaning of § 1983, but a municipality may not be held liable under may be held

---

[1]In future filings, the parties should provide an updated Caption as this Court has already stated, Bowman "should remove the Mayor and former police chief from the caption, as well as Nielsen . . ." as there are no existing claims against those defendants. Dkt. 22 at 22.

MEMORANDUM DECISION AND ORDER - 6

liable under § 1983 for actions of its employees based on a theory of respondeat superior. *Memorandum Decision and Order*, p. 6, Dkt. 22 (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) and *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Rather, under *Monell*, "plaintiffs suing a municipal entity for damages under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 883 (9th Cir. 2022) (quoting L*os Angeles County v. Humphries*, 562 U.S. 29, 30–31 (2010) (internal quotation marks omitted).

Bowman may satisfy *Monell's* policy requirement in one of three ways. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,* 44 F.4th 867, 883 (9th Cir. 2022). First, the City "may be held liable if it acted pursuant to an expressly adopted official policy." *Id.* (quoting *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021)) (internal quotation marks omitted). Second, the City "may be held liable based on a longstanding practice or custom." *Id.* (quoting *Gordon*, 6 F.4th at 973) (internal quotation marks omitted). Third, City "may be held liable if the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* (quoting *Gordon*, 6 F.4th at 974) (internal quotation marks omitted).

The Supreme Court has stated that the policies can include written policies, unwritten customs and practices, and failure to train municipal employees to avoid certain obvious constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 387

(1989). A plaintiff cannot simply restate these standards of law in the complaint, however. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and the plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679. Here, Bowman variously characterizes his theory of *Monell* liability as a policy, practice, or custom, inadequate training or failure to train, and ratification. The Court will discuss each theory in turn.

### A. *Violation by Policy, Custom, or Practice.*

A municipality may be held liable as a "person" under 42 U.S.C. § 1983 when it maintains a policy or custom that causes the deprivation of a plaintiff's federally protected rights. *Monell*, 436 U.S. at 694. To state such a claim, a plaintiff must allege either that (1) "a particular municipal action itself violates federal law, or directs an employee to do so;" or (2) the municipality, through inaction, failed to implement adequate policies or procedures to safeguard its community members' federally protected rights. *Board of Commissioners of Bryan County* v. *Brown*, 520 U.S. 397, 404, 407-08 (1997); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

The first inquiry in any case alleging municipal liability under § 1983 is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Peng v. City of Bellflower*, 30 Fed. Appx. 728, 734 (9th Cir. 2002). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat*

*superior* theory." *Id*. at 691. The custom or policy must be a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

*County of Washoe* discussed two types of policies: those that result in the municipality itself violating someone's constitutional rights or instructing its employees to do so, and those that result, through omission, in municipal responsibility "for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation." 290 F.3d at 1185-86 (citing *City of Canton*, 489 U.S. at 387-89).

Bowman alleges that "[BDP's] policy manual maintains a policy permitting agents of the Defendant, City of Boise Police Department, to determine whether juveniles can be found to be within the purview of the Idaho Child Protective Act as outlined in Idaho Code § 16-1601 et. seq. (summarily known as the Child Protective Act)." *Amend. Compl.* ¶ 22, Dkt. 24. Even construing the allegations in the Amended Complaint in the light most favorable to Bowman, they do not support a reasonable inference that the City's policy amounted to deliberate indifference. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (explaining that in reviewing an order granting a

motion to dismiss for failure to state a claim, factual allegations of the Complaint are construed in the light most favorable to the plaintiff).

### B. Failure to Train

A failure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees. *Id*. at 388-89. Unless the violation is so inconsistent with constitutional rights, however, a single incident will rarely rise to the level of deliberate indifference. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 406-406 (1997).

To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees. *Benavidez*, 993 F.3d at 1154 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Bowman alleges that the City of Boise, via Boise Police Department, failed to train Detective Morgan in the standard required for I.C. § 16-1601 of imminent danger. *Amend. Compl*. ¶¶ 61, Dkt. 24. "Defendants, and each of them, failed to properly train and/or understand or appreciate the consequences of declaring minor children pursuant to

the Idaho Child Protection Act." *Id*. Bowman also alleges that the inadequate training led to Bowman's harm by the removal of his son. *Id*. ¶ 67.

While deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are "patently obvious," an inadequate training policy cannot be inferred from a single incident. *Hyde v. City of Wilcox*, 23 F.3d 863, 874-75 (9th Cir. 2022) (quoting *Connick*, 563 U.S. at 61) *see also City of Canton*, 489 U.S. at 391 (explaining "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program"). But "'deliberate indifference' is a stringent standard of fault, requiring proof that the municipal actor disregarded a known or obvious consequence of his action." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793-94 (9th Cir. 2016). "Satisfying this standard requires proof that the municipality had actual or constructive notice that a particular omission in their training program will cause municipal employees to violate citizens' constitutional rights." *Id*. (internal quotation marks, alterations, and citations omitted). In order "to demonstrate that the municipality was on notice of a constitutionally significant gap in its training, it is ordinarily necessary for a plaintiff to demonstrate a pattern of similar constitutional violations by untrained employees." *Id*. (internal quotation marks omitted).

The Court finds Bowman's allegations insufficient and conclusory. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) ("To adequately plead municipal liability, the Complaint 'may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to

enable the opposing party to defend itself effectively.'" (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). However, Bowman sets forth virtually no facts supporting his conclusory allegations of a failure to train theory. Bowman also does not specifically allege how any deficient training caused the violation of his constitutional rights, nor did he provide a pattern of similar constitutional violations. Therefore, Bowman has failed to state a claim based on a failure-to-train theory against the City.

## C. Ratification

The third circumstance under which a municipality may incur liability under § 1983 is when "an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 123, 1250 (9th Cir. 2010). The Ninth Circuit has "found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). The Supreme Court has concluded that Congress did not intend to "impose liability vicariously on [employers or supervisors] solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692. The Ninth Circuit held that a police supervisor might be liable for the subordinates' unconstitutional actions if the supervisor knew or should have known about the conduct and failed to take corrective action. *Larez v. City of Los Angeles*, 946 F.2d 630, 634 (9th Cir. 1991). A § 1983 plaintiff must show a causal connection between the state official's personal conduct and the alleged constitutional violation. *Mabe v. San Bernardino County, Dep't*

*of Pub. Soc. Servs.*, 237 F.3d 1101, 1109 (9th Cir. 2001). Supervisory liability is imposed against a supervisory official for his "'acquiesce[nce] in the constitutional deprivations of which [the] complaint is made.'" *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) (citation omitted)). Authorization of unconstitutional conduct, whether explicit or implicit, is a basis for supervisory liability for a § 1983 claim in the Ninth Circuit.

Bowman, however, does not sufficiently plead any facts regarding the supervisory role of Detective Morgan. The Amended Complaint points to Morgan's actions, but there are no facts alleging that she holds a supervisory position to which *Monell* liability would attach. Nor is there an indication, other than the policy, for reviewing files and names no other defendant responsible for ratifying the actions of Det. Morgan. For these reasons, Count Two regarding Detective Amy Morgan is dismissed with prejudice.

### 3. Standing for Injunctive Relief

Standing must be shown for each form of relief sought, whether it be injunctive relief, damages, or civil penalties. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000). In order to have standing to seek injunctive relief a plaintiff must demonstrate that he has suffered or is threatened with a "concrete and particularized" legal harm, *Id.* at 560, coupled with "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

The standing formulation for a plaintiff seeking prospective injunctive relief is simply one implementation of *Lujan's* requirements. *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-61 (1992). The plaintiff must demonstrate that he has suffered or is threatened with a "concrete and particularized" legal harm, *Id.* at 560, coupled with "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Bowman has not demonstrated that there is a sufficient likelihood that he will be injured in a similar way. Bowman states that M.B. was born in 2004, making him over the age of 18 and, essentially, demonstrating that there will be no repetition of this alleged constitutional injury occurring again. Dkt. 24 at ¶ 16. Bowman's Amended Complaint does not articulate facts as to why injunctive relief is proper. For these reasons, Bowman has not met his burden and lacks standing in his request for injunctive relief.

### 4. Leave to Amend

Finally, the Court will exercise its discretion to dismiss the *Monell* claim against the City and Detective Morgan without leave to amend. This Court typically leans toward granting leave to amend in this situation.  But, granting leave to amend is within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In this case, the Court has already allowed Bowman an opportunity to amend his Complaint, and the Court will not give Bowman a third bite at the apple.

## ORDER

**IT IS ORDERED that:**

MEMORANDUM DECISION AND ORDER - 14

1. Defendant's Motion to Dismiss Plaintiff 's Amended Complaint (Dkt. 30) is

   **GRANTED**.

2. Count One against Defendant Adam Nielsen is dismissed without prejudice. Count

   Two is dismissed in its entirety with prejudice and without leave to amend.

   Bowman's request for injunctive relief is dismissed for lack of standing.

DATED: May 11, 2023

B. Lynn Winmill
U.S. District Court Judge